51 F.3d 283
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Lorenzo REYES-GALINDO, Defendant-Appellant.
 No. 94-50126.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 12, 1995.
Decided March 22, 1995.
 
 1
 Before: CANBY and NOONAN, Circuit Judges, and King,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Juan Lorenzo Reyes-Galindo appeals from his conviction after a plea of guilty to one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. Secs. 846 and 841(a)(1). Reyes-Galindo contends that (1) the district court erred in failing to dismiss his indictment on the ground of Government misconduct, (2) the district court erred in not dismissing his indictment because his waiver of his Fifth Amendment Kastigar rights pursuant to a letter agreement with the Government was invalid, and (3) the district court did not properly construe his plea agreement with the Government. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and affirm.
 
 I.
 
 4
 Reyes-Galindo was one of 15 defendants indicted on May 2, 1991 as the result of an FBI investigation involving a cocaine trafficking operation that allegedly transported more than a thousand pounds of cocaine from San Diego to Los Angeles on three days in March of 1990. On the basis of the testimony of a cooperating witness and eyewitness accounts by surveillance agents who photographed the drug convoys, the Government alleged that Reyes-Galindo was in charge of the shipments.
 
 
 5
 Following his arrest, Reyes-Galindo was initially represented by attorney Edmundo Espinosa. According to Reyes-Galindo, Espinosa told him he was sent by individuals in Mexico whom Reyes-Galindo knew and had worked for. Sometime afterwards, though, he began to be represented by another attorney, Eugene Iredale. Reyes-Galindo contends, on the basis of an unsworn and unsigned declaration, that Iredale considered the case against him to be "exceptionally weak" and advised against accepting a plea agreement. According to his own unsworn declaration, Reyes-Galindo was thereafter again approached by Espinosa, who allegedly told Reyes-Galindo that his family in Mexico might be in danger if he did not accept Espinosa's representation in lieu of that of Iredale. Reyes-Galindo says he thereafter discharged Iredale and again retained Espinosa.
 
 
 6
 In May 1992, Reyes-Galindo met with Government representatives to discuss his cooperation in exchange for a plea arrangement. Reyes-Galindo was accompanied at the meeting by Espinosa and another attorney, Robert Grimes, who explained that although he was not Reyes-Galindo's attorney of record, he was there at Reyes-Galindo's request. The Government and Reyes-Galindo's counsel agreed to an "off the record" proffer meeting. The ground rules for the meeting were spelled out in a proffer letter. The letter provided that the sessions would be held without defense counsel present and that although the Government could not use the information obtained against Reyes-Galindo in any criminal case, it could make derivative use of such information and pursue any investigative leads suggested by any statement by Reyes-Galindo. Reyes-Galindo and his counsel agreed to the terms in the letter.
 
 
 7
 The Government met with Reyes-Galindo for debriefings on five occasions between June 2 and August 25, 1992. According to an FBI summary of the first meeting, Reyes-Galindo told the Government that Espinosa told him to admit his involvement in the drug convoys but to deny having any other information about the operation. He was also to tell the Government about a drug-related murder in Florida. Reyes-Galindo also told the Government that he did not want Espinosa to know the substance of the information he provided to the Government, because he believed Espinosa was associated with Mexican drug traffickers and would relay the information back to them. Apparently, Reyes-Galindo never expressed any doubts about Grimes and does not allege on appeal that Grimes was in any way associated with anyone whose interests might have been in conflict with Reyes-Galindo's. The Government told Reyes-Galindo that it would not interfere in his choice of counsel, but added that it was important for him to have counsel he trusted. Reyes-Galindo told the Government that he trusted attorney Grimes and wanted to continue to be represented by both Grimes and Espinosa.
 
 
 8
 The Government contends that over the course of its meetings with Reyes-Galindo, it concluded that he was minimizing his own involvement, protecting the identities of coconspirators, and admitting only what it was apparent the Government already knew. According to the Government, it broke off the meetings after Reyes-Galindo said he would not testify at trial. The Government says it later met with Reyes-Galindo's attorneys and advised them that it would not enter into a cooperation agreement with Reyes-Galindo and would not move for a downward departure in his sentence for substantial assistance.
 
 
 9
 Reyes-Galindo contends that the debriefings and accompanying negotiations did, in fact, result in a plea agreement, albeit one that was never reduced to writing. Reyes-Galindo also contends, again in an unsworn declaration, that Espinosa told him that the plea agreement would limit his jail time to five years. However, Reyes-Galindo says Espinosa told him not to mention the terms of the plea agreement during the plea proceedings, "to preserve my safety and that of my family."
 
 
 10
 The Government concedes that it did offer Reyes-Galindo a plea agreement, but one without any terms for cooperation or a requirement that the Government move for a downward departure at Reyes-Galindo's sentencing. Reyes-Galindo did eventually enter a guilty plea in the district court. Although the Government had prepared a written plea agreement signed by the United States Attorney, Reyes-Galindo did not sign it. At the plea proceeding, counsel for the Government recited the terms of the plea agreement: the Government would recommend a three-point downward adjustment at sentencing for acceptance of responsibility and would also recommend sentencing at the low end of the applicable sentencing range. Both Reyes-Galindo and Espinosa agreed on the record that the plea agreement as recited by the Government was the full agreement and that no other promises had been made. Reyes-Galindo also acknowledged on the record that he faced a prison term of ten years to life, that the Court was not bound by the Government's recommendations, that he could not withdraw his plea if the sentence was more severe than expected, and that he was not pleading guilty as the result of any threat or force.
 
 
 11
 On January 26, 1994, the district court sentenced Reyes-Galindo to 262 months in prison to be followed by five years of supervised release.
 
 II.
 
 12
 This court reviews de novo Reyes-Galindo's claim that the district court erred in refusing to dismiss the indictment for Government misconduct. United States v. Citro, 842 F.2d 1149, 1152 (9th Cir.), cert. denied, 488 U.S. 866 (1992).
 
 
 13
 Reyes-Galindo claims that the Government had a duty to inform the district court of the alleged conflict of interest involving attorney Espinosa's purported ties to certain drug dealers in Mexico, and that its silence on this point constituted "outrageous conduct" warranting dismissal of the indictment.
 
 
 14
 Reyes-Galindo's claim is without merit. The Government told Reyes-Galindo that it was important for him to have counsel he trusted. Reyes-Galindo does not dispute the Government's contention that he told the Government that he trusted attorney Grimes and that he wanted to continue to be represented by both Espinosa and Grimes.
 
 
 15
 Even assuming that an actual conflict did exist with respect to Espinosa such as to deny Reyes-Galindo his Sixth Amendment right to counsel, See Cuyler v. Sullivan, 446 U.S. 335, 348 (1980), the district court nonetheless correctly found that Reyes-Galindo's representation by independent counsel effectively cured any such defect. See United States v. Allen, 831 F.2d 1487, 1502-03 (9th Cir.1987). Reyes-Galindo points to no evidence anywhere in the record that Grimes was in any way tainted by conflict. He does not even allege such a conflict. The district court, in denying Reyes-Galindo's motion to dismiss the indictment, found that Grimes was involved in Reyes-Galindo's defense at every step, including negotiations with respect to a plea agreement, and actively and persistently sought to obtain the best deal for Reyes-Galindo that he could. The district court thus properly found that Reyes-Galindo received the effective assistance of independent counsel he was entitled to under the Sixth Amendment. See Allen, 831 F.2d at 1503.
 
 III.
 
 16
 Reyes-Galindo next contends that the district court erred in not dismissing his indictment because his purported waiver of his Fifth Amendment right against self-incrimination in connection with the proffer meetings with the Government was invalid and the Government's alleged use of information obtained in those meetings violated the rule of Kastigar v. United States, 406 U.S. 441 (1972). He also argues that any waiver of his right under Rule 410 of the Federal Rules of Evidence to exclude evidence of statements made during plea negotiations was invalid, citing this court's holding in United States v. Mezzanatto, 998 F.2d 1452 (9th Cir.1993).[1]
 
 
 17
 Kastigar involved the use against a defendant of compelled testimony given under a grant of immunity. Here, as the district court properly noted, there was no testimony, no compulsion, and no grant of immunity. Mezzanatto involved the use at trial for impeachment purposes of statements made by a defendant during plea negotiations. In the instant case, again, there was no trial in which the Government could have used any tainted information.
 
 
 18
 Reyes-Galindo claims the information he gave the Government during the proffer meetings was improperly used against him in his Presentencing Report. In fact, as the Government points out, there is nothing in the Presentencing Report to suggest it is based in whole or in part on information obtained in the proffer meetings. The Government's conclusions as to Reyes-Galindo's leading role in the alleged drug operation were already reflected in a Magistrate's detention order issued on June 11, 1991--nearly a year before the first proffer meeting between Reyes-Galindo and the Government.
 
 
 19
 Moreover, the Government did not seek any sentencing enhancement, and the district court did not impose an enhanced sentence based on Reyes-Galindo's alleged role. Although the probation officer who authored the report recommended a four-point adjustment for Reyes-Galindo's role in the offense, the district court made no such upward adjustment. The court did adjust Reyes-Galindo's offense level downward by three points for acceptance or responsibility, at the recommendation of the Government.
 
 
 20
 Accordingly, even assuming the Government somehow made improper use of information in connection with Reyes-Galindo's sentencing, such use was harmless beyond any doubt.
 
 IV.
 
 21
 Finally, Reyes-Galindo claims that his plea agreement called for the Government to move for a downward departure at sentencing to ensure a prison term for Reyes-Galindo of no more than five years. He further contends that the district court erred in not enforcing the agreement as alleged by him.
 
 
 22
 We review the district court's construction of the terms of the plea agreement for clear error. United States v. Fernandez, 960 F.2d 771, 772 (9th Cir.1991) (per curiam).
 
 
 23
 The district court found Reyes-Galindo's assertions as to the terms of his plea agreement to be "preposterous" and "patently incredible," noting that the Government would not likely have made such a deal upfront, as Reyes-Galindo claims, before even determining the nature or value of a defendant's offer of cooperation. The district court also noted that Reyes-Galindo agreed to the terms of his plea agreement, as stated by the Government, in open court and under oath. Reyes-Galindo expressly disavowed the existence of any additional promises. Moreover, Reyes-Galindo's assertions, are supported, if at all, only by his own unsworn declaration, which was not given under penalty of perjury.
 
 
 24
 The district court's findings as to the terms of the plea agreement are amply supported by the record. They are thus not clearly erroneous.
 
 
 25
 It necessarily follows that Reyes-Galindo's further contention that the district court erred in not sanctioning the Government for failing to perform the terms of the plea agreement is without merit.
 
 V.
 
 26
 We AFFIRM the judgment of the district court.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The Supreme Court recently reversed this court's holding in Mezzanatto. See United States v. Mezzanatto, --- U.S. ----, 1995 WL 15050 (U.S., Jan. 18, 1995) (No. 93-1340)